May it please the court. Mr. Miller, my name is Mike Morley. I represent the defendant and appellant Owners Insurance Company in this case and I would like to reserve approximately five minutes of my time for rebuttal if I may. Well you have to monitor your own time because if you don't sit down it will elapse. I understand. I understand. I just want to preface my remarks, your honors, by saying that we live in a dangerous world today in North Dakota. I think the percentages are 50, perhaps north of 50, that automobile accidents are alcohol related. So I don't believe there's any question or issue with the fact that sober designated drivers play a very, very important role in our society today. There are just too many drivers driving impaired and intoxicated, too many accidents that result from impaired drivers and it's our position in this case that what the district court has done in this case is penalize a sober designated driver, Samantha Denault, and punish her for trying to be careful and get people home or back to their place of residence and where they wanted to continue partying safely. And the court has in fact, in this case, rewarded twice now bad choices and bad decisions of a young intoxicated woman, Amy Hiltner. And as this court knows, as I just mentioned, this case is the second appeal of this action. This court heard the first appeal in Hiltner versus Owner's Insurance Company, 869 F 3rd 699. It was filed in August 29 of 2017. And this court vacated the district court's judgment on appeal at that time and held that the district court improperly applied a heightened duty of care to the But this time the district court expressly said, yeah, that's not what I'm doing and I'm relying on the facts. So now where are we? Are we just, is there some other application of the fault under North Dakota law that's in erroneous or are we just looking at a factual determination? Well, I have a lot of respect for Judge Erickson. I want to say that I I knew him as a litigator. I appeared before him when he was a state district judge. I appeared before him a number of times when he was federal district judge and he's now a member of your bench. And I realized that Judge Erickson said at conclusion two in his conclusions in this case that Denault was the only person in the group that was sober. However, his decision is not influenced by her status as a sober designated driver. But Judge Erickson goes on to state at conclusion 10, or I'm sorry, well conclusion 3, Denault assumed an ordinary care to protect her passengers from foreseeable harm. Denault's fault was greater than any of the passengers due to the following. This is conclusion 10C. She had the greatest ability to assess danger. Now I know what Judge Erickson said in his conclusions that he was not apportioning or basing his decision on fault by Samantha Denault's status as a sober designated driver. But I believe a fair reading of Judge Erickson's conclusions has to lead to the inescapable conclusion that he still was factoring that status of Samantha Denault in when he apportioned fault because this court reversed, vacated, and the case was sent back down to Judge Erickson. It was not retried. He was simply ordered to make new findings of fact and conclusions of law. Well I think we left it up to the district court how to handle it but that's what the that's what the court ended. And that's what But what the district court did the second time, your honors, was assess the exact same percentages of fault against the three principal participants in this incident namely Samantha Denault, Amy Hiltner, and Joshua Jeffrey that he did the first time. He did not change the percentage of fault one iota. Did he your view? And again with all due respect to Judge Erickson, they are not significant. I believe from a fair reading of Judge Erickson's conclusions and findings he still makes the specific findings that Samantha Denault was the only sober person. And I think 10C, conclusion 10C, your honors, and that's a I believe at addendum 22 of our opening brief, Judge Erickson states that Denault's fault was greater than any of the passengers due to the following 10C. She had the greatest ability to assess danger, i.e. she was the only sober one in the group. I think a fair reading of Judge Erickson's conclusions and findings after remand still lead to the inescapable conclusion that he did on factor in Ms. Denault's status as a sober designated driver when apportioning her fault. Are there two things there though? She had the greatest ability to assess danger. Is that just maybe going to the fact that she's the only sober one? And then there's another, I think just a little twist, a sober designated driver. Are those two different things? Well not in this case because she was sober and the driver. She was the sober designated driver. The two go hand-in-hand and you can't, I don't think you can separate them in this case. So when Judge Erickson points out that Denault was the only sober person in the group and he also points out Amy Hiltner was intoxicated, Joshua Jeffries was intoxicated, and then he goes on to say Denault had the greatest ability to assess the danger. Again, I think we're right back to where we were on the first appeal from this court that he, his decision, his conclusions were unduly influenced by Ms. Denault's status as a sober designated driver. And again, I know this court will give deference to Judge Erickson and I know he said what he said and but it's our position that from the reading of his conclusions that one has to arrive at that inescapable conclusion that he still factored that into the fault apportionment that Ms. Denault was the only sober one and she was a designated driver in the case. We're also contending that the judgment is not supported by the greater weight of the evidence and so we're asking for a reversal and remand on that basis as well. Not simply on the status of Ms. Denault as a designated driver but we're also contending that based upon the the facts of the case that the facts simply do not support an assessment of fault on the part of Ms. Denault of almost three times that of the plaintiff Amy Hiltner and this court I believe is well aware of the facts from the first appeal and we've laid them out exhaustively in our brief but essentially this group was at a party that started out in Mayville, North Dakota at about about 8 o'clock one night. Ms. Denault drove that group over to an apartment owned by the name of a gentleman named Big Red and I think Big Red is Ethan Brooks so it's kind of an innocuous name but over to Big Red's they were at Big Red's for a few hours left the party at Big Red's at about midnight 1230. This was Ms. Denault's car she owned it she got in the driver's seat at Big Red's as she had earlier at Big Red's and there were seven people in the group. Five got in the car, three in the front seat including the driver Ms. Denault, two in the backseat. Xavier Lonewolf and Amy Hiltner both got onto the trunk of the car. They knew it was going to be driven and moved because they were going back to Ms. Lonewolf's apartment following the Big Red's party. Ms. Denault told Amy Hiltner get off the car. Others in the group told Amy Hiltner the same thing get in the car we're going back to Lonewolf's. She refused and she said no it's going to be fine and they were on the back the two of them on the back having a having a good time taking selfies watching their hair blow in the wind they were drinking alcohol and they were there was music from the inside of the car and they were actually swaying. Their backs were seated to the back window of the vehicle they were actually swaying to the music as they were driving and there weren't any issues from the first three turns from Big Red's back to Lonewolf's until that fateful fourth turn when Joshua Jeffries who I've categorized and I have no shame in doing that I've categorized Mr. Jeffries as a cruel malicious drunken passenger on that fourth turn he didn't grab a part of any of the vehicle but he pushed down on Ms. Denault's right leg and that caused the accelerator to speed up around that fourth corner causing Ms. Denault and Xavier Lonewolf to be ejected from the trunk of the car and they were injured so it's our position your honor that not only did Judge Erickson continue to apply a heightened improper duty on Ms. Denault as a designated sober driver but under the or bear out an assessment of liability on Ms. Denault of three times that of Amy Hiltner who had the last clear chance there was room inside the car she was told to get in the car no one forced her to sit out on the trunk she had the last clear chance to get inside that car in a safe position she chose the position that got her hurt in the end and according to the evidence Ms. Denault was doing everything right she was going slow approximately 15 miles per hour slower around curbs she was constantly looking in the rearview mirror back at the two young women sitting on the trunk to make sure that they were okay she was sober she was driving fine she was driving carefully she didn't want them there but they chose to put themselves there in a place of danger and only because of the cruel act of Mr. Jeffries on that fourth corner was Ms. Denault and Ms. Lonewolf ejected from the trunk and what's the significance of the percentages as a legal matter under North Dakota law well there's some significance of getting denied over 50% well there is there there's significance for underinsured motorists if if if Amy Hiltner if Amy Hiltner's fault is 50% or higher compared to the combined fault of all persons who contributed to her injury she has no recovery so her fault to make any potential recovery in this case has to be less than 50% I'm not I'm not basing my argument necessarily on the workings of the underinsured motorist law but that would be the fact if she was all it was 45 and Jeffries was 30 and Hiltner was 25 that adds up to 100 I think that's 100 that wouldn't that would eliminate recovery it would just change the total change the amounts exactly you are you're exactly correct your honor what what was the insurance company's position as to what the apportionment should be well we we've contended that Ms. Denault should have no liability because she was trying to do everything right but certainly between Ms. Denault and Ms. Hiltner Ms. Denault should be the lowest because she was driving carefully this court made specific findings in the first appeal she was driving the vehicle yeah very carefully said in the first appeal I thought that owners didn't contest that she was at fault to some degree well wrong or I suppose that's not wrong we do contest that her fault should be enough though to obtain a lot or obtain a recovery for Ms. Hiltner so we are position is you think Hiltner was 50 or more at least 50 at least 50 percent because that's what you would need to avoid that recovery at all that's correct your honor that is but you're not seeking that relief here you're just seeking what you well new trial I would we're asking for a new trial and and again judge Erickson has made findings twice and you know he's he's now full-time on the Eighth Circuit you want a new trial new judge new judge yeah and you want to make a new apportionment argument exactly proceeding exactly and I've got about 25 sorry I may reserve that if you wish thank you your honor we'll hear from mr. Miller why don't we wait till you get up to the microphone here so we can hear may please the court and counsel a new argument raised today by mr. Morley I ignored judge Erickson's opinion they want you he wants you to read tea leaves or maybe chicken entrails to see what he was really thinking rather than what he wrote in his opinion which is pretty clearly that he did not consider Mr. Nault being a designated driver in his fault allocation well I heard him arguing we should rely on the opinion and in particular the findings in paragraph 10 C and paragraph 2 and about how she was the only sober person in 10 C which says she had the greatest ability to assess danger so maybe you should address those which indeed she did pardon me yeah the North Dakota law which indeed she did have the greater ability to assess the danger yeah why was that because she was not drunk North Dakota law why didn't that just make his case then that the 10 C is about the fact that she was sober and she was the only sober person no that's that's not we don't ask you to start the clock running from the time that she got into the car and started the car the time starts to run from the time of her being outside the car with people on her trunk saying get off the car I will not start this car I will not move this car as long as you're there she didn't do that she got into the car and he says she's doing as safely as she can as long as she can to get these people to where they need to be not true she's in a hurry to get back to Grand Forks for a booty call she had total control up to the time that Jeffries pushed on her knee over whether that car moved at what speed it moved what route it took where the passengers sat North Dakota law as a provision and I I know we've cited it in past briefs they all kind of meld together now where voluntary intoxication can be considered in determining whether intent can be arrived at and that's what I read judge Erickson bringing that into the discussion that part of the law that it's my case law but going back to his actual conclusions aside from emphasizing that whether she was designated driver or not had nothing to do with what he decided he goes on to say that until Jeffries interference she was in exclusive control of the vehicle and then 10e he went through each of the individual acts that she could have chosen to perform which he did not do which would have prevented this tragedy in the district court's opinion it talks about fault under North Dakota law that includes not only negligence but also the assumption of risk right how would you assess the district courts assessment of the assumption of risk between or among the three people at issue I don't really see that directly addressed but maybe you can help me my assumption is and I think it's a logical assumption based on his is 55 25 20 allocation is that she assumed she being Amy has 20% responsibility for assuming that risk now whether she fully appreciated the risk yeah and I understand the numbers but I was that prong of the fault analysis well and I don't have them right in front of me now but he did detail what her acts were that put her in that precarious position that she chose to sit on the trunk and that she assumed the rest of some inclined the declines to get inside the car he did that as well yeah at which point then I'm mr. Nault in a hurry to get back to Grand Forks I said okay then I will get into the car I will start the car and I will take you back to the other apartment she assumed the risk of what might happen with a group of almost half a dozen intoxicated people indeed interestingly mr. Morley argued that Amy had the last clear chance to avoid her injury that's not true we argued contrary that the last clear chance to avoid injury would have absolved Amy from whatever fault she had under the old pre-comparative fault days the last clear chance doctrine is simply if a plaintiff puts herself in a precarious or dangerous position but the defendant has a chance after that to avoid injury to avoid the harm then that supersedes the plaintiff's fault and prior to the comparative fault days I think that the basic concepts of last clear chance to apply to this situation can I ask you you have said a couple of times that do not was in a hurry to get back to another town right is that I know that there was a fact-finding that she found it difficult she was irritated is there a particular fact that judge Erickson found that and she was in a place else other than Lone Wolf's apartment you know at this point after a number of years I don't know what was in his findings specifically this moment what do you mean after a number of years I mean this is an appeal that's before us today yes you're I can read the facts before the oral argument and I did indeed but whether he he specifically mentioned her urgency to get back to it up as though it's a key fact in the case well what if that's not a fact in the case then do you lose since that seems to be a key fact for you I'm not saying that it's a key fact it is a true fact from the transcript I'm sorry that it's not a finding though it's right I'm sorry for fighting it but I do not consider it a key fact I consider rule 52 a saying that he ought not be reversed absence an abusive discretion and the decision from the Anderson Supreme Court putting an extremely high extremely high burden on mr. Morley to to pull that off what do you think don't all it was supposed to do I think to not which should have says they volunteered to be the designated driver she's got four drunk people and two of them won't get in the car what she's supposed to do I don't know that she volunteered to be the designated driver is that is that in the transcript I'm asking all right excuse me is that a finding that he made I don't know that he made that this that's been the assumption based on the position she occupied it was her car she decided to drive but I see nothing in the transcript nor do I see anything in the findings that a discussion was made where she said okay I will act as the designated driver for you drunks going back to the Anderson decision as judge Erickson did indicate in his brief order denying the post trial relief sought by mr. Morley again nothing has changed he's back again no new arguments I'm not going to change anything allowing something other than and if the chicken entrails in trying to decide what what Ralph Erickson was really thinking rather than what he said I get the runs a fall of the Anderson case from the Supreme Court well I were not in a position and I challenged this court not to decide that well I've seen things differently than this experienced litigator state district court judge federal trial judge saw things when he heard the testimony and saw the parties testify that Anderson specifically says you're not to substitute your choice as to how you'd like to see this case turn out rather than that of the person who saw the testimony and it also mentions that that would turn a trial like we had in the sort of taking the play out on the road and opening in Providence before you get to the to Broadway that's not what this is about are you prepared to say that an aggrieved insurance company doesn't like the outcome they think that it's too much fault on the part of their their entity or the person that they are asked to have to indemnify could come up repeatedly to this court on basically a factual determination that's going to cause mischief as the Anderson court said a duplication of the trial judges ever in the Court of Appeals would very likely contribute only negligibly to the accuracy of fact determinations and at a huge cost in diversion of judicial resources are you prepared to do that are you prepared to say that Ralph Erickson was so far wrong that we need to substitute our judgment for him he went through thoroughly on remain I think the argument is that there was a legal error that was the argument the first time we agreed with it you made the same argument the first time we concluded there was a legal error and the argument here is that there's still a legal error because of the imposition of a heightened duty on the person who was sober because she was sober and the driver now maybe there's not a legal error I you can argue that but that's different from arguing second-guessing factual findings I am arguing there was not a legal error okay well I would be why don't you speak to that then for a minute if you would excuse me I'm sorry if you would speak to that for a minute because I think that's the primary argument from the company not that we should second-guess factual findings you know on a record that includes no legal error they're arguing legal error when the judge who heard the case says specifically he did not consider her status her claim status is designated driver I take him at his word I ask that you take him at his word when he said that she was more capable than others because she had not been drinking to determine the extent of the danger to her passengers that's simply a statement of fact that goes to as I said the the case law in North Dakota saying that it is permissible for a fact finder like Ralph Erickson it is permissible for a fact finder to take a look at voluntary intoxication and determine what role that played and how this played out and looking at that as North Dakota law clearly allows him to do permits him to do he stated the obvious that Amy Hiltner was mildly intoxicated Jeffries was more greatly intoxicated the opportunity the opportunities the last year clear chance the opportunities to Amy and one wolf jumped on the back of that car they were in the hands of misbehaved and that's where the district court noted that she had the greatest ability to assess the danger so I still I I think that's where the the concern about collapsing sober and designated driver are you you've emphasized some of the facts that preceded getting into the car but that finding is right there in where it is it begins with choosing to start the vehicle and then ends things with failing to take adequate measures right it's a statement of fact does that account to amount to her then being the designated driver does that open the door apparently for as mr. Morley says rewarding drunks and punishing sober drivers I don't think so the facts of this case stand or fall on the facts of this case when the judge says I did not take any kind of designated driver designation real or de facto into considering this I'm simply saying says judge Erickson that she had a greater ability to appreciate danger than the others she did that's a statement of fact not a misstatement of the law so I that finally after some nine plus years since she was injured in May of 2010 that you affirm the trial court and then send it back without affirmance and I thank you for your time thank you for your argument mr. Morley will give you one minute in rebuttal if you'd like I just want to talk about this business of that mr. Miller states that mrs. de Nault was in a hurry to get back to a he calls it a booty call I you know I just turned 66 I'm not sure I'm all that familiar with that term but I think that's mr. Miller's phrase for she was in a hurry to get back to Grand Forks and therefore she drove carelessly it's not in the record in fact the findings in the record at addendum 17 finding 49 by judge Erickson are quote despite Jeffrey's erratic behavior do not continue to operate the vehicle at approximately 15 miles per hour when the road was straight and slowed down to make the turns close quote those are the facts that's and and those are not in dispute and that doesn't sound to me and I don't think it sounded to this court on the first appeal that that's someone in a hurry to get back to Grand Forks for a so-called booty call and I did not argue at the first appeal my associate did I believe this same issue came up then and mr. Miller was shot down at that time as well and I'm very surprised that he would try to mislead the court again thank you all right